## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **BEVERLY J. ROCKETT,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CASE NO. 3:20-CV-1502-C-BK** |
| | § | |
| **MARK T. ESPER, DEPARTMENT OF** | § | |
| **DEFENSE, ARMY AIR FORCE** | § | |
| **EXCHANGE SERVICE,** | § | |
| **DEFENDANTS.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the undersigned United States magistrate judge for pretrial management, which includes entering findings and a recommended disposition on dispositive motions. The Court now considers *Defendants' Motion for Summary Judgment*. Doc. 37. For the reasons that follow, Defendants' motion should be **GRANTED**.

### I. BACKGROUND

Plaintiff Beverly J. Rockett, an African American woman over the age of 40, initiated this *pro se* employment discrimination action against her former employer, the Army & Air Force Exchange Service ("AAFES"), a government agency within the Department of Defense. Doc. 3 at 1; Doc. 38 at 15. Her operative complaint, construed liberally, alleges Defendants violated Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq. See* Doc. 7 at 66 ("Plaintiff alleges that she was discriminated against and was not treated in the same manner as the other white, younger employees."); Doc. 7 at 83 (alleging Plaintiff was subjected to unlawful discrimination because

of her race and age).  Plaintiff also avers she was retaliated against and made to endure a hostile

work environment.  Doc. 7 at 2.  She seeks compensatory and punitive damages, as well as

attorneys' fees.  Doc. 7 at 100.  Defendants move for summary judgment in their favor on all

claims.  Doc. 37.

## II.  FACTS

In connection with the motion *sub judice*, the parties submitted evidence of the following,

substantially undisputed facts.  Defendants hired Plaintiff as a "Financial Analyst II."  Doc. 39 at

17 (Plaintiff's EEO Declaration).  Plaintiff was hired on a probationary basis that was to extend

for a year after her hiring.  Doc. 38 at 6; Doc. 52 at 19 (Plaintiff accepting this as true but

claiming it "does not go far enough").  However, before the probationary period expired,

Defendants issued Plaintiff a "Separation During Probationary Period" letter that terminated her

employment.  Doc. 38 at 9-10; Doc. 52 at 26.  Plaintiff filed a formal complaint with the

AAFES's EEO Office on April 3, 2017, and later requested an EEOC hearing.  Doc. 38 at 9-10;

Doc. 52 at 27-28.  The administrative law judge issued summary judgment in favor of AAFES,

and Plaintiff appealed that decision, but the summary judgment was affirmed in AAFES's favor.

Doc. 38 at 10; Doc. 52 at 28.   Plaintiff subsequently initiated this lawsuit.

## III.  APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

56(c)).  The moving party has the initial burden of "informing the district court of the basis for

2

its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citation omitted).

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

Unsubstantiated beliefs are not competent summary judgment evidence—"the party opposing summary judgment is required to identify specific evidence in the record *and to articulate the precise manner in which that evidence supports his or her claim*." *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 176 (5th Cir. 2016) (quotation omitted) (emphasis in original). Finally, the court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment," but "[a] party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings." *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995).

**B. Title VII and ADEA Framework**

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Further, the ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The *McDonnell Douglas* burden-shifting framework applies to ADEA

and Title VII in cases based on circumstantial evidence of discrimination. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). If a plaintiff establishes a *prima facie* case of discrimination under the ADEA and Title VII, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). The defendant's burden in this regard is one of production, not persuasion, and "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If the defendant meets its burden, the case progresses to the pretext stage, where "the question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiffs on the basis of [their protected status]." *Pratt v. City of Hous., Tex.*, 247 F.3d 601, 606 (5th Cir. 2001).

### IV.  ANALYSIS

#### A.  Plaintiff's Title VII claim fails.

##### *1.  Plaintiff establishes a* **prima facie** *case.*

To establish a *prima facie* case of Title VII race discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) she was replaced by someone outside the protected class or was otherwise discharged because of race. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223-24 (5th Cir. 2001).

Here, Defendants only dispute the fourth element, focusing on Plaintiff's inability to show similarly situated employees. Doc. 38 at 15-18. Defendants ignore, however, the other basis for satisfying the fourth element; to-wit: replacement by someone outside the protected class. *Russell*, 235 F.3d at 223. Defendants concede that Carolyn Borger ("Borger"), a white

female, replaced Plaintiff. Doc. 38 at 19, 21-22; Doc. 39 at 21 (Plaintiff's Declaration stating

that "Borger . . . replaced me within a few days after my termination"); Doc. 39 at 122 (Debra

Martinez's Declaration that Borger was hired as Plaintiff's replacement). Because Plaintiff was

replaced by an individual of a different race and fulfilled the other requisites, she has

demonstrated a *prima facie* case of Title VII discrimination. *See Russel*, 235 F.3d at 224 n.5

(stating this constitutes a *prima facie* case).

### 2. *Defendants demonstrate a legitimate, nondiscriminatory reason for Plaintiff's termination.*

The burden of production now shifts to Defendants to provide a "legitimate,

nondiscriminatory reason" for terminating Plaintiff's employment. *Vaughn*, 665 F.3d at 636. To

meet their burden, they must provide both "clear and reasonably specific reasons" for their

actions. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981). As the

legitimate reasons for Plaintiff's termination, Defendants offer her "basic inability to

successfully carry out the duties of her position and an increasing perception that she was not a

good fit for the organization." Doc. 38 at 20. More specifically, Defendants aver Plaintiff's job

performance was "deficient from very early in her employment" due to her failure to meet

deadlines, inability to learn the basic tools required for her position, struggles using Microsoft

Office, insubordinate communication, failing to respond to emails and follow her chain of

command, and a general lack of respect. Doc. 38 at 6-8.

Having reviewed the proffered evidence, the Court concludes Defendants have

established legitimate, non-discriminatory reasons for terminating Plaintiff's employment. *See*

Doc. 39 at 16-34 (Plaintiff's Declaration); Doc. 39 at 73-90 (Plaintiff's third-level supervisor

Kenneth Jacquin's Declaration); Doc. 39 at 95-104 (Principal Management Official Leigh

Roop's Declaration); Doc. 39 at 106-124 (Plaintiff's second-level supervisor Debra Martinez's

Declaration); Doc. 39 at 129-142 (Plaintiff's first-level supervisor Lisa Cannon's Declaration);

Doc. 39 at 145-155 (Defendants' Human Resources Manager Carol Chandler's Declaration).

For example, Plaintiff's first-level supervisor cites as reasons for Plaintiff's termination

her failure to "understand how the organization operated," including other "performance issues

and attendance issues." Doc. 39 at 134. Her second-level supervisor expounded as to why

Plaintiff was not a good fit for the position: "she began having issues with her chain of

command, even to the point of insubordination"; she "would not read or respond to emails,

which [was] a critical part of her job functions"; she missed deadlines; she rejected opportunities

to learn; and "there [were] a couple of times [she] would leave, saying she would return, but she

didn't, resulting in her committing time fraud and being docked for leave without pay." Doc. 39

at 112-13. Defendants met their burden through their supporting evidence, which demonstrates

Plaintiff's poor performance history and her need for improvement during her period of

probationary employment.

### 3. Plaintiff cannot show Defendants' reasons were pretext for discrimination.

Once the defendants have met their burden of production and responded with legitimate,

nondiscriminatory reasons for the employment action, the plaintiff must show pretext by offering

sufficient evidence that: (1) "a discriminatory reason more likely motivated" her employer or (2)

her employer's "reason is unworthy of credence." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d

1503, 1505 (5th Cir. 1988). Plaintiff disputes Defendants' allegations regarding her deficient job

performance but fails to direct the Court to any contradictory evidence. *See* Doc. 52 at 21 (citing

generally the more than 900-page appendix attached to her response). In fact, Plaintiff

frequently points to evidence *supporting* Defendants' claims. *See, e.g.*, Doc. 52 at 21 (Plaintiff's

admission that she began to miss deadlines after March 21, 2016); Doc. 39 at 10 (demonstrating

Plaintiff was terminated four months after she began missing deadlines); Doc. 52 at 25 (citing Roop's Declaration, Doc. 54-5 at 98, which states Plaintiff's employment was terminated because of her "failure to respond to counseling to use her chain-of-command and repeated demonstration of unprofessionalism by lack of respect and courtesy to her supervisor"); Doc. 52 at 31 (Jacquin's email, Doc. 54-1 at 46, detailing Plaintiff's absenteeism, lack of respect for her direct supervisor, bypassing her immediate supervisor in communications, poor attitude, and failure to respond to emails).

Plaintiff repeatedly argues that the real reason she was fired was because of "email traffic" in January 2016, which she alleges involved her supervisors deleting her emails. *See, e.g.*, Doc. 52 at 3. Plaintiff fails, however, to direct the Court to any *evidence* supporting her allegation that emails were deleted, and the full "traffic" she references reveals nothing of substance that would create a material factual dispute as to Defendants' proffered reason for firing her. *See* Doc. 54-1 at 39-46, 48-55.

In sum, Plaintiff's mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat Defendant's motion for summary judgment. *Diaz,* 820 F.3d at 176; *see Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (finding unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence). Plaintiff has not identified specific evidence in the record supporting her claim, and the Court is under no duty to sift through the hundreds of pages in the record to assist her in this task. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

Based on the foregoing, Defendants are entitled to summary judgment on Plaintiff's race discrimination claim.

**B.  Plaintiff cannot prevail on her ADEA claim.**

Again, Plaintiff's burden of demonstrating a *prima facie* ADEA claim is the same as her burden to do so under Title VII.  *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 & n.6 (5th Cir. 2009) (finding that the same general law applies to claims under either statute because Title VII was the model for the ADEA).  To establish a *prima facie* case of age discrimination, a plaintiff must show that she (1) was within the ADEA's protected class; (2) was discharged; (3) was qualified for the position; and (4) was replaced by someone of comparable qualifications outside the protected class.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996).  If a plaintiff's replacement is "insignificantly younger," however, the "inference that an employment decision was based on an illegal discriminatory criterion" does not arise.  *Id.* at 312 (citing *Teamsters v. United States*, 431 U.S. 324, 358 (1977)).

Defendants argue Plaintiff cannot establish a *prima facie* case of age discrimination because her replacement, Carolyn Borger, was more than 40 years old.  Doc. 38 at 22.  Plaintiff does not contest this fact.  Thus, she must show that Defendants' actual basis for her discharge was age bias.  *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) (citation omitted).

The only evidence Plaintiff offers that remotely implicates discrimination under the ADEA is Plaintiff's supervisor's directive that she "pick up the pace."  Doc. 52 at 12.  However, for workplace remarks to provide sufficient evidence of discrimination, they must be: (1) related to the plaintiff's protected class; (2) proximate in time to the adverse action at issue; (3) made by someone with authority over the action; and (4) related to the adverse action itself.  *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000).  Courts have found that comments about working faster, including the phrase "pick up the pace," are not evidence of age

discrimination but rather are "stray remarks." *Pierce v. Patient Support Servs., Inc.*, No. 5:18CV138-RWS-CMC, 2020 WL 2485920, at *21 (E.D. Tex. Feb. 3, 2020) (citing *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993)).  The comment Plaintiff complains of, especially when considered in conjunction with the numerous complaints about her missing deadlines, does not indicate age bias.  *See EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) ("In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." (citation omitted)).

In sum, Plaintiff has not shown Defendants terminated her because of her age, and Defendants are entitled to summary judgment on her ADEA claim.

### C. Plaintiff's claims for retaliation and hostile work environment cannot survive summary judgment.

#### 1. Plaintiff cannot show a prima facie retaliation claim.

Plaintiff claims she was retaliated against for discovering and disclosing what she believed to be errors in certain AAFES auditing reports to upper management.  Doc. 7 at 35-37. Liberally construing her complaint to allege that the purported retaliation related to either her age or race, the Court finds that Plaintiff has not meet her burden of proof.

To establish a *prima facie* claim of retaliation under the ADEA or Title VII, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.  *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992).  Protected activity under Title VII "is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any

investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). The same definition applies in the ADEA context. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996). Under both statutes, the allegedly retaliatory action must be related to protected activity.

As relates to Plaintiff's claim, reporting accounting errors to upper-level management, as is not equivalent to opposing practices rendered unlawful by either Title VII or the ADEA. Thus, Plaintiff has failed in her burden to establish a *prima facie* case of retaliation under either statute; as such, Defendants are entitled to summary judgment on this claim as well.

### 2. Hostile work environment claim likewise fails.

Read liberally, Plaintiff's complaint may also include a hostile work environment claim. Doc. 7 at 2 ("Plaintiff alleges her supervisors, led by Kenneth Jacquin, her third-level supervisor, kept their 'knees on her neck,' creating a hostile work environment and unfair treatment." (cleaned up)). To prevail on such a claim under Title VII, a plaintiff must show that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known about the harassment but failed to take remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citation omitted). Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quotation marks and citations omitted). Similarly, to prevail on a hostile work environment claim under the ADEA, a plaintiff must demonstrate that: (1) she was over the age of 40; (2) she was subject to harassment, either through words or actions, based on her age; (3) the nature of the harassment was such that it created an objectively intimidating,

hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.  *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).  To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998) (citation omitted).

Here, Plaintiff's construed claim of hostile work environment fails under both standards. Patently fatal to her construed claim of hostile work environment, is her failure to proffer any evidence of intimidating, hostile or abusive conduct that was premised on her race or age.  Her single, conclusory allegation that her "third-level supervisor, kept their 'knees on her neck,'" wholly fails in that regard.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim, if any.

## V. CONCLUSION

For the foregoing reasons, *Defendants' Motion for Summary Judgment*, Doc. 37, should be **GRANTED**, and Plaintiff's claims should be **DISMISSED WITH PREJUDICE**.  As no claims will remain, the Clerk of the Court should be directed to close this case.

**SO RECOMMENDED** on February 15, 2022.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

11

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and where in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).